GILFORD HOSIERY CO. *v.* PITMAN M'F'G Co. & a.

A grantor of land, together with certain water-rights and an undivided interest in a flume which crosses the land conveyed and is in use for the enjoyment of water-rights, has not, by implication, the right to appropriate a portion of the land described in the deed for the enlargement of the flume in order that he may have a full and effective enjoyment of his own water-rights on the same flume below.

BILL IN EQUITY, alleging that the flume whereby water is conducted across the Pitman Manufacturing Company's premises to the plaintiffs' mill is not of sufficient size to convey effectively the water to which the plaintiffs are entitled; that said Pitman company have obstructed it by placing in it posts, tie-rods, and braces; and praying that it may be enlarged and straightened, and for general relief. Facts found by the court.

The Avery dam, upon the Winnipiseogee river, creates at Laconia a water-power, one half of which is enjoyed on the west side and one half on the east side of the river. Upon the east side, next to the dam, is the mill of the Abel Machine Company; next below, the Pitman company's hosiery mill; next, the grist-mill of Thurston & Moulton; and lastly, the plaintiffs' hosiery mill. They all draw water from the same flume, which, from the dam to the point where the Abel Machine Company take their water, is over

forty feet wide; thence to the point where the Pitman company take their water, about twenty feet wide; and thence to the northerly line of the grist-mill lot (a distance of about two hundred feet), about ten feet wide. The plaintiffs complain only of the latter portion of the flume, all of which is upon the land of the Pitman company.

September 1, 1864, the Gilford Manufacturing and Mechanics Company were seized of one half the dam and water-power, and of all the lands and mills hereinafter mentioned, and on that day conveyed to Thomas Appleton, with warranty, the land, described by metes and bounds, with the mill thereon now belonging to the plaintiffs, together with the water-power rights, as follows: "Also, four undivided sixteenth parts of one half of the Avery dam, and four undivided sixteenth parts of one half of the water of said dam, with a right to draw the water through said company's flume, receiving said water at the southerly end of said grist-mill, and four undivided sixteenth parts of said flume, or any flume hereafter constructed in place thereof." October 18, 1864, Appleton conveyed the same to the plaintiffs.

November 1, 1864, the Gilford M. & M. Co. conveyed to S. K. Baldwin, with warranty and by metes and bounds, the land with the mill thereon next below the dam, with water-rights and rights in the Avery dam, by a description identical in terms with that in the deed to Appleton.

January 2, 1865, the Gilford M. & M. Co. conveyed to C. A. Busiel & a., by metes and bounds, with warranty, all the premises now occupied by the Pitman company, except a machine-shop situated next above the grist-mill, with the same water-rights and rights in the Avery dam as were conveyed by the preceding deeds, describing such rights in the same words.

March 6, 1875, the title to all the property and rights conveyed by this deed was, by force of sundry conveyances, vested in the plaintiffs, who on that day, with full covenants of warranty, conveyed all the same to J. P. Pitman & a. John C. Moulton, hereinafter named, joined individually in the covenants of this deed.

August 23, 1865, the Gilford M. & M. Co. conveyed, with warranty and by metes and bounds, the land, with the machine-shops above referred to thereon, to W. M. Busiel & a., and "also one undivided sixteenth part of one half of the Avery dam, so-called, and one undivided sixteenth part of the water of said dam, and one undivided sixteenth part of the flume," etc., continuing in the same words used in the deed to C. A. Busiel & a. August 22, 1867, W. M. Busiel & a. conveyed all the same to J. P. Pitman & a.

January 24, 1876, J. P. Pitman *&* a. conveyed to the Pitman company all the lands now occupied by them, including the machine-shop, and also five undivided sixteenth parts of one half of the Avery dam, etc, as in the foregoing deeds.

October 2, 1868, the Gilford M. & M. Co. conveyed, with full covenants, and by metes and bounds, the land, with the grist-mill thereon, to Calvin D. Cass, and three undivided sixteenth parts of one half of the Avery dam, and of the flume, and of the water of said dam, as in the foregoing deeds. May 6, 1881, John C. Moulton and Benj. E. Thurston, by virtue of sundry deeds, became seized of all the grist-mill property and rights so conveyed to Cass, and have ever since owned and now own the same.

The plaintiffs are a corporation, and all the shares of their capital stock are, and for many years have been, owned by said John C. Moulton. A part of the Pitman company's mill stands over the upper end of the ten-foot section of the flume, and March 6, 1875, and before that time, was supported by iron posts set in the flume. Since March 6, 1875, the Pitman company have set two or three more posts in the flume for the same purpose. The tie-rods were placed in the flume when it was rebuilt, about 1868, and the braces since 1875, but with the knowledge of and without objection by the plaintiffs. The effect of all and each of these obstructions upon the flow of the water, though appreciable, is comparatively slight. The defendants make no objection to their removal.

No change of location or otherwise, except as above stated, has been made in the part of the flume in question since September 1, 1864. When it was built, long prior to 1864, the business done by all the mills, and the water-power required, were much less than at present. When it was rebuilt, about 1868 (said Moulton and the plaintiffs taking part in the work and defraying a portion of the expense), the business done and the power required were substantially as now.

The Pitman company's premises, except the machine-shop,—including the machinery, and also the space adjacent to the flume, a portion of which must be taken for the enlargement prayed for,—are now in substantially the same situation, relative to the flume, as they were March 6, 1875, and before that time; and are now used, occupied, and enjoyed in substantially the same manner and for the same purposes.

The Pitman company, for nearly ten years, have used no water-power at the machine-shop, which was burned in 1875 and has not been rebuilt, and do not desire or intend to use any there in the future. They draw all the water to which they are entitled—five sixteenths of one half—from that portion of the flume which is above the part in question.

The flume, in its present state, is ample for the purpose of conveying to the plaintiffs' mill all the water to which it is entitled; but it is not sufficient to convey that and also to convey to the grist-mill, at the same time, the water to which it is entitled. When the grist-mill is consuming its three sixteenths of one half the water, the plaintiffs can, with the present flume, obtain from the use of its four sixteenths of one half the water a part only of

the effective power which they could obtain from the same quantity of water by means of a sufficient flume. The difficulty is, not that any of the mills above the plaintiffs consume more than their just proportion of the water, nor that the plaintiffs do not now receive their full proportion of the water, but that the plaintiffs, by reason of the insufficient size of the flume, are compelled to use it at a lower head. An enlargement of the flume to fourteen feet in width would largely increase the plaintiffs' water-power. If the plaintiffs are by law entitled to it, some enlargement of the flume reasonably ought to be made.

*T. J. Whipple, Jewell & Stone,* and *Chase & Streeter,* for the plaintiffs.

*E. A. Hibbard, Barnard & Barnard,* and *W. S. Ladd,* for the defendants.

ALLEN, J. The right of the plaintiffs to an enlargement of the flume upon the defendants' premises, if it exists, results from the deed of the Gilford Manufacturing and Mechanics Company to Appleton, September 1, 1864, and from the deed of the plaintiffs to the defendants, March 6, 1875. In the former deed, the grantors, after conveying the land by metes and bounds, and the mill upon it, now owned by the plaintiffs, describe in the deed the water-rights annexed to the mill as "four undivided sixteenth parts of one half the Avery dam, and four undivided sixteenth parts of one half of the water of said dam, with a right to draw the water through said company's flume, receiving said water at the southerly end of the grist-mill, and four undivided sixteenth parts of said flume, or of any flume hereafter constructed in place thereof." The title to the defendants' premises, by a conveyance to the plaintiffs March 6, 1875, was united with that of the plaintiffs' premises; and on the same day the plaintiffs conveyed to the defendants their premises, by metes and bounds, and with covenants of warranty defining the water-rights annexed as "four undivided sixteenth parts of one half the Avery dam, and four undivided sixteenth parts of one half the water of said dam, and four undivided sixteenth parts of the flume now or formerly owned by said company, or of any flume hereafter constructed in place thereof." The water-rights belonging to the plaintiffs' premises were carefully defined, and conveyed as incident to his mill, and as part of the premises, by the deed of September 1, 1864; and the water-rights belonging to the defendants' premises were in their deed as carefully defined, and by the same description as was contained in the deed of the same premises to the plaintiffs, who by their deed conveyed to the defendants their water-rights as part of the premises, and as incident to their mills. Though the title to both mills was, before the conveyance to the defendants, united in the plaintiffs, the water-rights annexed to each were separate; and when

the plaintiffs gave a deed to the defendants, they conveyed with the land and mills all the water-rights which by deed or by use had been annexed to these mills before, retaining whatever water-rights they owned and did not convey, namely, those which by their first deed were described as annexed and incident to their mill, and no more.

The plaintiffs owning both premises and mills, one of which was supplied with water-power by means of a flume extending across and through the other, the conveyance of the other with its incidental water-rights, with no express reservation of the flume and water-rights belonging to the lower mill, left them to the plaintiffs as incident to and a part of their retained premises. They remained attached to the plaintiffs' mill, as a part of their estate not included in the conveyance to the defendants. The flume and rights thus remaining to the plaintiffs are what had become annexed to their premises by deed, by use, and by practical location; and they cannot now be enlarged in any way to narrow the defendants' grant, or to curtail the rights which in express terms the plaintiffs conveyed to the defendants. Whether the plaintiffs' water-rights be regarded as incident to and a part of their premises not conveyed to the defendants, or as an implied reservation of an existing incident to the plaintiffs' mill, and subjecting the defendants' premises to the easement of a flume as a water-way to the plaintiffs' mill, the extent of the excepted incident or reserved easement is too well defined to admit of any enlargement without their consent. The water-rights conveyed to the plaintiffs by their first deed, and retained in their conveyance to the defendants, were four sixteenths of one half the dam and water, and four sixteenths of the flume as a way for the water to the mill. The flume was an object definitely marked and located. It was subsequently reconstructed, of the same extent and capacity and in the same place, with no claim of the plaintiffs then made for a larger one. It has always been in visible use as an adjunct of the plaintiffs' mill and premises, and is found to be of sufficient capacity for the passage of the plaintiffs' four sixteenths of half the water. When the plaintiffs accepted their deed conveying water-rights by definite description, and, without enlargement or restriction, conveyed to the defendants all subsequently acquired water-rights, they adopted the flume then existing as the measure of a necessary water-way to their mill. It was that flume, then visibly attached to and used as a part of the plaintiffs' premises, to the limits of which the defendants' grant extended, and not some other or wider or differently located flume; and the plaintiffs cannot claim its enlargement upon land of the defendants with any greater reason than they could the right to draw from the dam to their mill more than their four sixteenths of half the water.

*Bill dismissed.*

CARPENTER, J., did not sit: the others concurred.